GERMAN NATIONAL BANK OF BEATRICE, APPELLANT, V.
REGINALD W. LAFLIN ET AL., APPELLEES.

FILED APRIL 4, 1907.   No. 14,719.

Appeal: INSTRUCTIONS: EVIDENCE.   Instructions *held* not to be preju-
    dicial error, and evidence examined, and *held* to be sufficient to
    sustain the judgment.

APPEAL from the district court for Gage county:
WILLIAM H. KELLIGAR, JUDGE.   *Affirmed.*

*E. O. Kretsinger* and *L. M. Pemberton,* for appellant.

*Rinaker & Bibb* and *Hazlett & Jack, contra.*

JACKSON, C.

The action is against a former clerk of the district court
on his official bond, and is grounded on an alleged failure
to index certain judgments, by reason of which the judg-
ment defendants were enabled to and did transfer real
estate possessed by them and thus defeated the collection
of the judgments.   The answer alleges negligence of the
plaintiff in not causing execution to sooner issue upon
the judgments, and charges that one of the judgment
debtors owned real estate of sufficient value to satisfy the
judgments at the time they were obtained; that he after-
wards transferred the same by deed to the Schlitz Brew-
ing Company, and that more than five years after the
rendition of the judgments the plaintiff had execution
issue thereon and caused the same to be levied on the real
estate so transferred; that the property was then of the
actual value of $10,000, and was appraised for the pur-
pose of sale at $8,000, more than sufficient, at two-thirds
of the appraised value, to satisfy the judgments involved;
that the brewing company thereupon obtained in the fed-
eral court a temporary injunction restraining the sale, and
that pending the hearing on the temporary order the plain-

tiff and the brewing company entered into a collusive and, as to the defendants herein, fraudulent agreement that the plaintiff should recall the executions under which the levy had been made, that the temporary injunction should be dissolved, subject to the right of the brewing company to revive the same, if necessary, the action in the federal court to remain pending for that purpose, and that alias executions should then issue, and a new levy be made; that the plaintiff should procure a new appraisement of the property, sufficiently low to enable the brewing company to bid the same in for $1,250, and would undertake that the property should not sell for a sum in excess of that amount; that the collusive agreement was carried into effect and the property bid in by a representative of the brewing company for $1,250; that the proceeding pending in the federal court created a cloud upon the title and prevented other persons from bidding at the sale; that the sale to the brewing company was confirmed and deed issued pursuant thereto. The reply tendered the issue that the brewing company had contracted for the property prior to the term of district court at which the judgments were procured, and paid $150 of the purchase money, and that the value of the judgment debtor's interest therein did not exceed the sum of $1,700 at the time the judgments were entered. The trial was to a jury, resulting in a verdict and judgment for the defendants. The plaintiff appeals.

The judgments were entered at a term of court commencing February 6, 1893, and were liens on the real estate of the debtor defendants from the first day of the term. It is the claim of the plaintiff that the evidence discloses the property, the date of the sale of which is the principal matter in controversy, to have been the subject of an oral contract of sale between the owner and the brewing company prior to February 6, and $150 of the purchase money paid; that the contract was thereafter fully executed, and that the judgment lien attached only to the debtor's interest in the property, represented by a

remainder of unpaid purchase money amounting to $1,700, and that the increased value at the time of the levy was due to a valuable building erected by the purchaser after the title was acquired, and the discharge of prior incumbrances; that its agreement with the Schlitz Brewing Company at the time of the first levy contemplated deducting from the actual value of the property the value of the improvements made by the brewing company, and prior incumbrances paid by that company at the time of the purchase, and resulted in an appraisement of the actual interest of the judgment debtor at the time the lien attached.

The trial court instructed the jury on this branch of the case as follows: "The court instructs the jury that under the law of this state a verbal contract for the sale of real estate is void, and a payment of the part of the purchase price alone does not make it valid or bind the bargain. If from the evidence in this case you believe that there was no contract, or, if any, only an oral contract, without any payment in behalf of the Schlitz Brewing Company, without delivery of possession of the real estate in question, before February 7, 1893, between the Joseph Schlitz Brewing Company and Dr. Brumback, then the judgments described in plaintiff's amended petition became, were, and continued to be a lien upon the real estate which has been referred to by the witnesses herein as the 'Schlitz property' and upon all the improvements thereon at any time thereafter during the life of said judgments until the sale of said property under said judgments or one of them." Whether the instruction, if erroneous, was prejudicial to the plaintiff depends upon the facts. Byron Bradt conducted the negotiations on behalf of the brewing company for the purchase of the property. He was a saloon-keeper residing in Beatrice, and was desirous of purchasing the property on his own behalf; with that object in view he went to Milwaukee, Wisconsin, and interviewed the proprietors of the Schlitz Brewing Company for the purpose of borrowing money to purchase the prop-

erty. The brewing company offered to purchase the property in their own name, if satisfactory arrangements could be made, erect a suitable building thereon, and lease it to Bradt.

He was called as a witness on behalf of the plaintiff, and from his testimony the date of the contract must be determined. On the direct examination he testified to having had the first conversation with the owner, one Brumback, and after his visit to the brewing company they sent their agent from Omaha to inspect the property, who determined the value to be $4,500 and that the company would pay that price. His testimony in part is as follows: "Q. Now, at the time you and he agreed with Brumback on the price, was there any consideration paid to Brumback? A. I think I paid him $150 when the thing was settled, myself. Q. What was that for? A. It was the custom; I don't remember the price. He wanted something to bind the contract someway. I suppose that was it. I don't remember now; it is so long ago; my memory is not very good anyway, I guess. * * * Q. When was this $150 paid with reference to the time the deed was made? A. I couldn't tell you; probably as soon as we could get an understanding with the people; I couldn't tell you about the time, or how long. Q. Was it paid before or after the deed was made? A. It must have been made before. Q. How long before would you say? A. That is something you can't—— Q. Your best judgment is all I am asking? A. I wouldn't think 30 days, probably not 20 days. Q. Several days before the deed was made? A. Yes, sir; a few days, but how long I don't remember."

On cross-examination, after having testified that the first negotiations with Brumback were with a view of purchasing the property for himself, and of his attempt to borrow the money from the brewing company, that he went to Milwaukee about January 20, 1893, for that purpose, and that some time after his return a representative of the company visited Beatrice for the purpose of inspect-

ing the property and fixing a price which the company would be willing to give, he testified to having received a letter from the Schlitz Brewing Company authorizing the purchase; the examination being in part as follows: "Q. Do you remember of getting a letter from the Schlitz Brewing Company telling you that they would accept the lot and buy the same for the price of $4,500, and the lettter was dated at Milwaukee, February 3, 1893? A. I remember such a letter as that. Q. Now, that is the first time that they notified you that they would buy the lot for that price, on February 3, 1893? A. Yes, sir; to the best of my recollection. Q. Now then, if that letter was dated in Milwaukee on February 3, 1893, you would not receive that letter for a couple of days, or at least a day and a half thereafter? A. I know about how long it does take. Q. How long? A. It generally takes two days, a day and a half or two days to the time it comes. Q. Now, that letter you received from them was the first time that you had any authority from the Schlitz Brewing Company to pay Brumback $4,500 for that lot, is that not true? A. That is my recollection, yes, sir. Q. Now, then, you had no other authority except that letter dated at Milwaukee, February 3, 1893, to act for them to pay $4,500 for that lot until you received that letter? A. No, sir. Q. Then you didn't receive the letter until about the 5th or 6th of February, did you? A. That I can't recollect now. Q. You received it about that time? A. I judge so; that's generally the way they come; I can't recollect the date I receive them. Q. If you had paid $150 down on that lot, it was paid for yourself, prior, if paid prior to the 3d, 4th or 5th of February, 1893, was it not? A. That I don't remember, it must have been. Q. You had no authority to pay any money out on that lot for the Schlitz Brewing Company until the 5th of February, 1893? I don't think I had; if I had I have forgotten it. Q. I understood you to say your only authority to pay any money for the Schlitz Brewing Company for that lot was through that letter dated—— A. Yes, sir. Q. February 3 in Milwau-

kee? A. Yes, sir; that was definite; that settled the whole thing. Q. Do you remember when you next saw Mr. Brumback for the Schlitz Brewing Company after you received that letter? A. I don't remember, it must have been mighty soon. Q. Now, then, Mr. Bradt, when you saw him, you had him make the deed for that property and place it in escrow until the trade was finally determined—is that not true—and the purchase price finally paid to him for that lot? A. I can tell you my recollection of it. We had the papers, my recollection is, put in Mr. Cook's bank, and were to be held there until the money was received, which came later on. That is my recollection, my best recollection. It might have been some other place, but I think it was put there. Q. Now, then, the day that the deed was made and delivered to Mr. Cook's bank, as you have testified to—— A. Yes, sir. Q. Was the day you finally consummated the trade with Brumback and agreed to pay him the $4,500 for that lot. A. That is my recollection; not positive; my best recollection, as near as I can recollect it." The deed from Brumback to the brewing company was dated February 7, 1893, and was acknowledged on that date. The checks of the brewing company to pay the full amount of the purchase price were drawn six days later.

The only reasonable inference to be drawn from this testimony is that the contract for the purchase of the property between the brewing company and Brumback was made on February 7, 1893, the day following the one on which the judgment liens attached; that any negotiations which Bradt may have had with Brumback prior to that time were on his own behalf and constituted no part of the transaction between the brewing company and the owner of the title. That being true, it follows that whatever else may be said of the instruction complained of it was not prejudicial to the plaintiff.

Another objection urged against this instruction is that it fails to take into account the prior incumbrance on the property at the time the judgment was rendered. That

objection is untenable.   The instruction does not purport
to advise the jury that the judgment would be a first lien.
Furthermore, in an instruction given by the court on its
own motion, the jury were advised with reference to the
prior incumbrance according to the contention of the
plaintiff.

It appears that in the proceedings in the federal court
the deposition of the witness Bradt was taken on behalf of
the Schlitz Brewing Company, and the plaintiff in this
case offered to prove at the trial what this witness testi-
fied to when his deposition was taken.   Objections were
sustained by the trial court, and this ruling is assigned
as error.   The ruling in that respect does not appear to be
prejudicial to the plaintiff.   The witness was called for the
plaintiff, and on his direct examination testified substan-
tially as it is claimed he testified in the proceedings in
the federal court, and to show that he testified to the
same facts at another time would not strengthen his testi-
mony now.

Finally, it is contended that the judgment is contrary
to the evidence in any event.   This contention is based
upon the statement that the judgments amounted to the
sum of $6,104.59 at the time the execution was levied on
the property claimed by the Schlitz Brewing Company,
and that the value of the property at that time did not
exceed $8,000, as shown by the evidence, and that after
deducting the prior incumbrance there remained a valu-
ation of but $5,385 to apply on the judgment indebtedness.
The computation, however, omits certain payments ad-
mitted by the president of the plaintiff bank to have been
paid on the judgments.   Furthermore, there is evidence in
the record from which the jury might have found, and
probably did find, that the value of the property was as
much as $9,000, more than sufficient to satisfy the indebt-
edness.

It follows that the judgment of the district court should
be affirmed.

Duffie and Albert, CC., concur.

49

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.