## JOHNSTON v. BALDOCK.

Opinion Filed Sept. 13, 1921.

Nos. 11730 and 11997 Consolidated.

Rehearing Denied Nov. 8, 1921.

(Syllabus.)

1. Specific Performance—Oral Contract for Sale of Land — Statute of Frauds —Part Performance.

The principle upon which a decree is granted for the specific performance of an oral

contract for the sale of real estate is where the party seeking performance, with the knowledge and consent of the promisor, has made payments or has done acts in reliance upon the promise which change the relation of the parties so as to render a restoration of their former condition impracticable, and where it would amount to a fraud upon the part of the promisor to set up the statute of frauds as a defense and thus to receive benefits of the acts done by the party relying upon the promise.

## 2. Same—Burden of Proof.

The statute of frauds was never intended to be used as a shield or as a breastwork to aid anyone in the perpetration of a wrong. In all instances, however, the burden is upon the party alleging the oral agreement to clearly establish the same, together with the acts constituting the full performance, or such part performance of the contract as would satisfy a court of equity that it would be inequitable to refuse relief.

## 3. Same.

The part payment of the purchase money is not alone such part performance of an agreement to sell real estate as will authorize a court to enforce its specific performance. But part payment and taking possession in good faith, or taking possession with the knowledge of the vendor and making valuable and lasting improvements, constitute such part performance as will ordinarily warrant a court in decreeing specific performance of the contract.

## 4. Frauds, Statute of—Oral Contract for Sale of Land—Validity — Possession of Lessee.

The possession necessary to take an oral contract for the sale of real estate out of the statute of frauds, must be clearly shown by the evidence to refer to and result from, and to have been taken and entered into by virtue of the contract. A prior possession taken under a lease and continued, without a surrender of the premises and a re-entry under the contract to purchase, is wholly insufficient and of no avail, to take the oral contract out of the statute of frauds.

## 5. Same—Improvements—Sufficiency.

Improvements relied upon in connection with possession must be both valuable and permanent. Slight expenditures are insufficient.

## 6. Justices of the Peace—Forcible Entry and Detainer—Jurisdiction—Title.

In an action brought under the forcible entry and detainer statute, the introduction of evidence by either party showing title to the real estate does not operate to divest the justice court of jurisdiction. In such action possession alone is involved, and the action cannot be converted by the acts of either party into an action to try title.

Error from District Court, Oklahoma County; James I. Phelps and Edward D. Oldfield, Judges.

Action by J. T. Johnston against Nancy E. Baldock for specific performance of contract to sell real estate. Judgment for defendant, and plaintiff brings error. Also action by Nancy E. Baldock against J. T. Johnston and wife in forcible entry and detainer for possession of same real estate. Judgment for plaintiff, and defendants bring error. Cases consolidated and affirmed.

Loyal J. Miller, for plaintiff in error.

Geo. B. Rittenhouse, F. A. Rittenhouse, Gordon Stater, and P. T. McVay, for defendant in error.

PITCHFORD, J. On the 2d day of December, 1919, the plaintiff in error instituted an action in the district court of Oklahoma county against the defendant in error to enforce the specific performance of a contract for the sale of lots 25 and 26, in block 7, in Northwest addition to Oklahoma City. For convenience, the parties hereafter will be designated as they appeared in the trial court.

After the plaintiff had introduced his evidence the defendant filed a demurrer thereto, the grounds of the demurrer being: First, that the evidence was insufficient to entitle plaintiff to the relief demanded; second, that the contract claimed to have been made was not in writing subscribed by the defendant; third, that the plaintiff was in possession of the premises by virtue of a lease between himself and defendant at the date of contract, and had not surrendered possession of the premises to the defendant prior to the commencement of the instant action. The plaintiff prosecutes an appeal to this court from a judgment sustaining the demurrer, and assigns numerous errors. The errors assigned are practically covered by the second assignment of error, which is, that the court erred in sustaining the demurrer.

The evidence discloses that, on the 19th day of October, 1914, the defendant, in writing, leased the premises in controversy to the plaintiff for a term of two years, beginning on the 18th day of October, 1914, and ending on the 18th day of October, 1916, for the consideration of $600, payable $25 per month in advance. Upon the expiration of the lease, plaintiff continued to occupy the premises by paying $25 per month. No different arrangements were made between the parties until July, 1919, when the rents were raised to $35 per month. During the latter part of July, 1919, plaintiff and defendant discussed the sale of the property

to the plaintiff. There seems to have been several conversations regarding the sale, which lead up to an agreement on the 1st or 2d of August, whereby plaintiff was to buy the property, paying therefor the sum of $4,500. This sum was to be paid by the plaintiff assuming a mortgage on the property for $2,200, and to pay to the defendant the balance, to wit, $2,300, at the rate of $25 each month, with interest thereon, until the full purchase price had been paid.

On the date the parties came to an agreement, it was agreed that the plaintiff would have the papers prepared and bring the same back to the defendant so that she could sign the deed; that he would prepare the papers he was to sign and get his wife's signature to the same; that the monthly payments on the $2,300, with the interest thereon, would approximate $40. On the 2d day of August, the date of this conversation, the defendant stated to the plaintiff she was needing $45. The plaintiff's reply was: "All right, then; I will just make it $45, and we can adjust that in the next monthly payment." The plaintiff deposited, on that day, $45 in the Security National Bank to the credit of the defendant and mailed her a duplicate slip showing that the sum had been so deposited. On September 2d he deposited in the same bank $35.49, and on the 4th of October he deposited $40. Deposit slips for the last two payments were mailed to the defendant. On November 1st $39.83 was deposited.. Duplicate deposit slip was mailed to the defendant, accompanied by the following letter:

"Dear Mrs. Baldock: I am enclosing herewith duplicate deposit slip for $39.83, being the November first payment on my place, as per our contract, deposited to your credit in the Security National Bank today. Respectfully, J. T. Johnston."

On November 19th the plaintiff received from the defendant the following letter:

"Mr. J. T. Johnston. Dear Sir: I am in receipt of your letter dated Nov. 1, 1919, enclosing deposit slip for $39.83 which you have placed to my credit in the Security National Bank of this city. I note you state the above amount is payment on my home. I wish to advise you are in error, and I am accepting your deposit only for the regular monthly rent for the month of November 1, which should be $40 instead of $39.83, this to apply on rent of my property at 814 West 8th Street. Yours truly, Mrs. N. E. Baldock."

On the 1st of December, the plaintiff, in company with Mr. Bernard Miller, went to the home of defendant and informed her

that he had come to make the December 1st payment; that he had brought a mortgage properly executed by himself and wife, and the notes for the deferred payments properly signed; that he also had a deed prepared for her to execute; and informed her that if she did not like the form of the deed, any satisfactory deed would be satisfactory to him. The plaintiff further informed the defendant that the payment tendered was on the condition that it was to be taken as a payment on the purchase of the property, and not as rent. The tender of the money was refused. It further appears that, after the contract of sale, the plaintiff built a storeroom on the premises, and also placed gravel in the basement of the garage so that the latter might be rented for automobiles.

On cross-examination, the plaintiff testified that sometime in August—the exact date is not given—that the defendant informed him that she would go no further with the deal; that she had sold another piece of property and had become easy on money matters and would not be forced to sell the premises in controversy.

It further appears that the plaintiff, at no time prior to the contract with defendant, had surrendered the possession of the premises to the defendant.

Under section 941, Revised Laws of 1910, a contract for the sale of real property is invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent.

It is contended on the part of the plaintiff that the above statute has no application in this instance, in view of the evidence presented to the trial court, for the reason that a parol agreement for the sale of real estate is not within the statute of frauds where the vendee has paid all or a part of the purchase price, and taken possession of the property and made valuable and lasting improvements thereon. This proposition is sustained by numerous authorities from almost every state in the union, but in every instance we find that the payments made must have been made as part of the purchase price; that possession must have been taken under and by virtue of the oral contract, and that the improvements made must have been made by the purchaser under the honest belief that he had a right to make the same, and that such improvements so made must be lasting and valuable.

We shall discuss these several requirements in the order named. Under the evidence, the only payment which the plaintiff

is justified in claiming as payment on the purchase price is depositing, in the Security National Bank on the 2d day of August, the sum of $45 to the credit of the defendant. We are borne out in this statement by the evidence of the plaintiff himself, wherein he says he was informed by the defendant sometime in August that she would go no further with the sale. The exact date in August when plaintiff received this information does not appear, so when the payments were made in September, October, and November, plaintiff then knew that defendant had repudiated the contract. He claims, however, that someone told him that defendant might go ahead with the deal and avoid trouble. It is in evidence that it was the understanding of the parties on August 2d, when the contract was made, that plaintiff would have the necessary papers prepared, and the deal closed by the execution of the necessary instruments by the respective parties. However, so far as the evidence shows, nothing was done as to the execution of these instruments until the first of December thereafter, and no excuse is given for the long delay. The question naturally arises, was not the delay caused by the information received by plaintiff from defendant that the deal was off? When the plaintiff made the November payment, the letter accompanying the deposit slip informed the defendant that the amount deposited in the bank was to be applied, not as rents, but as a part of the purchase price for the premises. The defendant notified the plaintiff that this payment would not be received as part of the purchase price, but would only be received as rents. No protest seems to have been made by the plaintiff to this claim on the part of the defendant. When the 1st of December arrived, the plaintiff, as we have seen, went to the home of the defendant and tendered the December payment on the conditions as heretofore stated.

The principle upon which a decree is granted for the specific performance of an oral contract for the sale of real estate is where the party seeking performance, with the knowledge and consent of the promisor, has made payments or has done acts in reliance upon the promise which change the relation of the parties so as to render a restoration of their former condition impracticable, and where it would amount to a fraud upon the part of the promisor to set up the statute of frauds as a defense, and thus to receive benefits of the acts done by the party relying upon the promise. The statute of frauds was never intended to be used as a shield or as a breastwork to aid anyone in the perpetration of a wrong. In all instances, however, the burden is upon the party alleging the oral agreement to clearly establish the same, together with the acts constituting the full performance, or such part performance of the contract as would satisfy a court of equity that it would be inequitable to refuse relief.

In the instant case the plaintiff has wholly failed in making any showing entitling him to the relief he asks by reason of payment of a part of the purchase price of the land.

In Halsell et al. v. Renfrow and Edwards, 14 Okla. 674, 78 Pac. 118, the 8th and 9th paragraphs of the syllabus are as follows:

"(8) The payment of the purchase money is not alone such part performance of an agreement to sell real estate as will authorize a court to enforce its specific performance. But part payment and taking possession in good faith, or taking possession with the knowledge of the vendor and making valuable improvements, constitute such part performance as will ordinarily warrant a court in decreeing specific performance of the contract.

"(9) The acceptance of benefits under a contract which will impose consent to all the obligations arising from such acceptance, must be a voluntary acceptance with a knowledge of the facts affecting such acceptance, and payment of money to an agent will not constitute such voluntary acceptance unless it is shown that he was authorized to accept such payment."

In Levy v. Yarbrough et al., 41 Okla. 16, 136 Pac. 1120, it is held:

"(a) But the mere acceptance of the purchase price under an oral contract is not of itself sufficient to take the sale out of the statute of frauds." See Kelly v. Fisher. 263 Ill. 184; German National Bank v. Laflin, 78 Neb. 715; Milholland v. Payne, 155 N. Y. Supp. 773.

In order for any payment made by plaintiff to entitle him to specific performance, it would be necessary for him to show that he had taken possession of the premises by reason of the oral contract of sale. We, therefore, come to the question, did the plaintiff take possession under the alleged contract? We have seen that he went into possession under the lease dated October 18, 1914, and held under this lease until October, 1916, and thereafter continued to pay the same rents as he had paid under the lease which continued until July, 1919, when the rents were raised to $35 per month. These several payments were made by depositing the amounts in the Security

National Bank and mailing the defendant deposit slips. Was there a change of possession? In other words, is the plaintiff allowed to say that, while he was a tenant of the defendant, he and defendant entered into this oral contract for the sale of the premises held by him at the time as a tenant?

In the instant case, if plaintiff had shown that the contract had been fully executed on his part, he would be protected, as there is sufficient elasticity in the rules of equity to enable the court to render such a decree as would give such relief as would fully compensate the plaintiff, and a decree that would not permit the defendant to retain the land and also the fruits of performance on the part of plaintiff; and in such a case a court of equity might find that, in order to protect the right and prevent the wrong, the only decree that would effectuate this end would be by granting specific performance. But authorities cited by plaintiff fail to show that specific performance has been decreed in a single instance under facts similar to those in the case at bar.

The possession required to take an oral contract for the sale of real estate out of the statute must be clearly shown by the evidence to refer to and result from, and to have been taken and entered into by virtue of. the contract. A prior possession taken under a lease and continued, without a surrender of the premises and a re-entry under the contract to purchase, is wholly insufficient and of no avail to take the oral contract out of the statute of frauds. Some authorities hold, however, that where all of the purchase price is paid, it would be inequitable to refuse specific performance.

In Larney et al. v. Aldridge, 31 Okla. 447, 121 Pac. 151, it is said:

"A tenant, while remaining in possession, even after the expiration of his term, is precluded, on the doctrine of estoppel, from either setting up an adverse title to defeat an action of ejectment or. without first surrendering possession, making a contest with his landlord over the title held by him at the time of securing the right of entry."

In Pappe v. J. L. Trout et al., 3 Okla. 260, 41 Pac. 397, it is stated:

"Where it is shown that a tenant is in possession of property. under a written lease and permission of his landlord, held. that he is estopped from setting up an adverse claim of title, in himself, in the property while he holds under such condition. * * *

"Where a lease is entered into for a period of six months, and a provison is inserted to the effect that, after the expiration of such period, if the tenancy continues, it shall be deemed a tenancy from month to month, held, that after a tenant has continued to occupy the premises leased, after the expiration of the six months, and paid rent as agreed in the lease, he will not be permitted to deny its validity."

In Roberts v. Templeton et al. (Ore.) 80 Pac. 481, the syllabus reads as follows:

"Where plaintiff, up to the time of his oral purchase of the interest of a tenant in common in a mine, was in possession under a contract with a co-tenant of the vendor, so that his prior possession merged into that under his purchase, there was not such a change of possession under the contract as to take it out of the statute of frauds."

In the body of the opinion, the rule is stated as follows:

"To entitle a party to a specific performance of an oral contract to convey real property it must affirmatively appear that the possession was taken in pursuance of and under the agreement alleged in the complaint."

In Hutton v. Doxsee (Iowa) 89 N. W. 79, it is said:

"Where a party is in possession of land under a lease, his continuance in that possession will not be sufficient to support a claim of part performance under a subsequent contract of purchase."

In the body of the opinion, the rule is stated as follows:

"The rule seems to be well settled that, if one is already in possession of land under a contract of lease, his continuance in that possession will not be sufficient to support a claim of part performance under a subsequent contract of purchase."

The rule is stated in 36 Cyc. 659 as follows:

"Possession, in order to be an act of part performance, either alone or in connection with other acts, is subject to several requirements. First, it must have been taken in pursuance of the contract. Further, it must be exclusively referable to the contract; that is to say, it must be such a possession that an outsider, knowing all the circumstances attending it save only the one fact, the alleged oral contract, would naturally and reasonably infer that some contract existed relating to the land, of the same general nature as the contract alleged. * * *

"If the possession, therefore, could be accounted for just as well by some other right or title actually existing in the vendee's favor, or by some relation between him and the vendor other than the alleged oral contract, it is not such a possession as the doctrine requires. * * *

"The most important application of this rule relates to a possession begun before, and continuing after, the making of the oral contract. Such continuance in possession does not satisfy the tests of an effective act of part performance, since it does not point to a new contract, but may be accounted for by reference to the former right or title; also since there has been no change of position on plaintiff's part which could work a fraud upon him on refusal of specific performance. * * *

"Thus the continuance in possession of a tenant will be referred to his original tenancy, even though the original term has expired, since it is a frequent and natural thing to find a tenant holding over after the expiration of his term, calling for no contract to explain it. A tenant's continued possession, therefore, is not an act of part performance of his contract to purchase from his landlord, nor of his contract for a renewal of the lease."

Plaintiff contends that after the contract with defendant he made lasting and valuable improvements consisting of a storeroom on the premises and placing gravel in the basement of the garage so that the latter could be rented for automobiles. The authorities hold that the making of valuable and permanent improvements on premises by a vendee, whose possession antedated the oral contract of sale, must be of such character as cannot reasonably and naturally be accounted for by his original tenancy; and such improvements must be of such a character as to be inconsistent with the continuance of the old relation. Slight improvements, considerably less than the rental, will not suffice. Not only in magnitude and value, but in other respects, the improvements must unequivocally refer to and result from the agreement. There is no evidence showing that these improvements were made with the consent of the defendant, or that she knew or the same being made; nor is it shown that the improvements claimed were made before the defendant repudiated the contract. There is nothing to show whether or not the improvements were valuable or lasting; nothing to show that they were permanent and became a part of the real estate further than the inference that the storage-room was erected on the premises, and would therefore become a part of the real estate.

In 36 Cyc. 670, the rule is stated as follows:

"If improvements are relied upon, not merely as evidence that an actual possession was taken, but as an additional independent ground for specific performance, they must be both valuable and permanent. Slight expenditures for repairs, and the like, such as might naturally be made by any person as incident to an occupation of the premises, are insufficient."

In Ryan v. Lofton (Tex. Civ. App.) 190 S. W. 752, the first and second paragraphs of the syllabus are as follows:

"(1) Improvements, consisting of piping a house for gas, the value not shown, and the purchasing of wall paper amounting to $2.10 not paid at the time of trial, were so insignificant as not to take the conveyance as to which an oral contract was sought to be enforced, out of the statute of frauds (Vernon's Sayles' Ann. Civ. St. 1914, art. 3965, subd. 4); the property being worth $700.00, with a rental value of $10.00 per month.

"(2) Where, to enforce oral contract to convey, reliance is had upon the claimant's possession and improvement of the premises, the value of the improvements must be shown to be such proportion of the value of the property and made in such reliance upon the contract as to give the claimant equitable rights."

In Bradley v. Owsley (Tex.) 11 S. W. 1052, it was held that possession under an oral agreement to convey land and the building of a hog pen or ranch containing about one-half acre, and the moving away of a house on the premises by the buyer, did not constitute such improvements as to take the contract out of the statute of frauds.

In Baldwin v. Squier, 31 Kan. 283, 1 Pac. 591, Mr. Justice Brewer, delivering the opinion of the court, uses the following language:

"The contract, being one in parol, was obviously, under the statute of frauds, nonenforceable. Three matters are presented to take the case out of the statute: First, the improvements. To this we reply that as these were made after Baldwin's death, and without authority from his heirs, they can have no effect. If the title did not pass at Baldwin's death, it has not been transferred by any subsequent matters. Second, delivery of possession. But to take a parol contract for the sale of land out of the statute of frauds by reason of a delivery of possession, such possession must be notorious, exclusive, and obviously in pursuance of the contract."

In the case of Cobb v. Johnson (Tex.) 108 S. W. 811, plaintiff brought action to compel specific performance of an oral contract to convey land. He claimed that, after the contract, he took possession of the premises and made valuable improvements. The improvements made consisted of a hen house valued at $15. It was held that this improvement did not entitle the plaintiff to specific performance. In the body of the opinion, the court said:

"The character of the improvements claimed by Johnson to have been made by

him are no more permanent than the hog pen, which was held not to constitute such improvements in Bradley v. Owsley, 11 S. W. 1052, above cited. The insignificance of the improvements made must relate to the value, and, if we consider in this case the improvements as being of the value of $15, as testified by Johnson, then to compare that with the contract price of the land, $1,100, we have the improvements as compared to the value of the land in the ratio of not exceeding one and one-half per cent."

We conclude that the judgment sustaining the demurrer to the evidence should be affirmed.

On the 8th day of December, 1919, the defendant, Nancy E. Baldock, filed in the justice court of Oklahoma county, an action of unlawful detainer against J. T. Johnston and wife for the possession of the premises in controversy. To this action, J. T. Johnston and wife, as their defense thereto, claimed that the justice had no jurisdiction over the subject-matter of the action, for the reason that an action had been filed in the district court of Oklahoma county, wherein the plaintiff had brought an action against the defendant for the specific performance of a contract for the sale of the real estate involved; that the said action was still pending and undetermined in the district court. Judgment was rendered by the justice of the peace in favor of the defendant, Baldock, from which the plaintiff, Johnston, and wife appealed to the district court. Upon trial in the district court, judgment was rendered in favor of said defendant, from which said plaintiff and wife appeal. These causes, numbered in this court, respectively, 11730 and 11997, upon motion, were advanced and by order of this court consolidated.

The error assigned for reversal of the judgment of the trial court in No. 11997, the action for unlawful detainer, is:

"Error of the trial court in refusing to sustain the objection of the plaintiffs in error to the jurisdiction of the court, and in overruling the same, and in overruling their motion to dismiss said action in the district court, over their objection and exception."

It is the contention of plaintiffs in error that, where a court of equity has obtained jurisdiction of the controversy for any purpose, it will retain jurisdiction for the purpose of administering complete relief, and it may for this end determine purely legal rights, which otherwise would be beyond its authority; that a court of equity, which has obtained jurisdiction of the controversy on any ground for any purpose, will retain such jurisdiction for the purpose of admin-

istering complete relief and doing entire justice with respect to the subject-matter, and to avoid multiplicity of suits; and they cite a number of authorities to sustain this contention.

We have examined the authorities cited and find that the same are not applicable to the facts in this case. The action of unlawful detainer, under our law, is purely possessory; no question of title can properly be raised or tried in such an action; it is tried in a summary manner, and one of the objects of the action is to give relief in as short a time as may be, to one who is wrongfully held out of the possession of real property, and such a one has this remedy irrespective of any other rights in or to the property which may be litigated in the district court at law or in equity.

The question of title or boundaries cannot ordinarily arise or be tried in such a proceeding; the defendant in such an action is not allowed to inject such questions into the case, and have the same transferred to the district court, under section 5357, Rev. Laws of 1910, when it is clearly shown that he entered into possession of the premises as a tenant of the owner and was holding as tenant on the date he claims an unexecuted oral contract was made for the sale of the premises.

In Zahn v. Obert, 24 Okla. 159, 103 Pac. 702, the court said:

"For the reason that title may not be adjudicated and finally determined in a forcible detainer action, it is provided that neither before a justice of the peace nor in the district court, in such action, shall such judgment be a bar to any other action brought by either party. See section 5088, Wilson's Rev. & Ann. St. 1903; * * * When a party seeks to have title adjudicated in such an action, or to oust the court of jurisdiction by such an averment, such allegation should be stricken out upon motion."

In Deninger et ux. v. Gossom, 46 Okla. 596, 149 Pac. 220, the plaintiff brought an action of forcible entry and detainer before the justice of the peace. The defendant answered setting up an equitable title—"that the title to property was involved, and prayed the justice of the peace to certify the cause to the district court." A motion to strike the equitable defense was sustained. We quote from the body of the opinion, pages 604 and 605, as follows:

"Defendants argue that the justice of the peace erred in sustaining the motion of plaintiff to strike out the equitable defense, and the only authorities cited in their brief are upon this point. Defendants should have refiled their answer in the county court

and had the trial court pass on same; however, the Supreme Court of this state, as well as the Supreme Court of Kansas, from whence our statute came, have often held that the Unlawful Entry and Detainer Act is purely a possessory action, where title will not be litigated, and when an answer is filed setting up an equitable defense and the case is certified to the district court, such court is not vested with jurisdiction."

In Armour Packing Company v. S. K. Howe, 62 Kan. 587, 64 Pac. 42, it is said:

"Section 5042 of the General Statutes of 1899 (Gen. Stat. 1897, ch. 103, p. 26), providing that, when it appears to the satisfaction of a justice of the peace that the title or boundary of land is in dispute in any action, he shall certify the case to the district court for trial, has no application to actions of forcible entry and detainer."

In the body of the opinion, the rule is stated as follows:

"It was the manifest intention that forcible entry and detainer proceedings should speedily terminate. They are summary in character. No continuance is allowed by the statute for a longer period than eight days without the giving of bond to the adverse party. The delay incident to actions where title is tried and adjudicated would tend to defeat the purposes for which the remedy is given. Section 5042, supra, has been borrowed and re-enacted in Oklahoma, together with our procedure relating to actions of forcible entry and detainer. In the case of McDonald v. Stiles, 7 Okla. 327, 54 Pac. 487, the Supreme Court of that territory passed on this question, and held as we do."

In Casey v. Kitchens, 66 Oklahoma, 168 Pac. 812, the syllabus reads as follows:

"(1) Forcible Entry and Detainer—Title—Evidence. Evidence of title to real estate can be introduced in an action of forcible entry and detainer only as an incident tending to show the right to possession. * * *

"(4) Justices of the Peace—Forcible Entry and Detainer—Possession. In an action brought under the forcible entry and detainer statute, the introduction of evidence by either party showing title to the real estate does not operate to divest the justice court of jurisdiction. In such action possession alone is involved and the action cannot be converted by the acts of either party into an action to try title." See Brown v. Hartshorn, 12 Okla. 121, 19 Pac. 1049; Anderson v. Ferguson et al., 12 Okla. 307, 71 Pac. 225.

We conclude that the judgment of the trial court in cause No. 11730, wherein J. T. Johnston was plaintiff and Nancy E. Baldock was defendant, and in the action No. 11997, wherein Nancy E. Baldock was plaintiff and J. T. Johnson et al. were defendants, should be affirmed, and it is so ordered.

All the Justices concur, except KANE, J., not participating.