STINCHCOMB et al. v. STINCHCOMB et al.

No. 34508. Feb. 26, 1952.

Rehearing Denied May 6, 1952.

Application for Leave to File Second Petition for Rehearing Denied Aug. 5, 1952.

*246 P. 2d 727.*

V. E. Stinchcomb and E. P. Ledbetter, Oklahoma City, for plaintiffs in error.

Washington & Thompson, Oklahoma City, for defendants in error.

PER CURIAM. Plaintiffs commenced this action in the district court of Oklahoma county against the defendants for specific performance of an oral contract to require the defendant, Lee Stinchcomb, to convey to plaintiffs, Glen Lee Stinchcomb and Eleanor Sue Stinchcomb, a ten-acre tract of land located in section 21, township 12 north, range 4 west, Oklahoma county, Oklahoma. Also, plaintiffs asked that a trust deed given to V. E. Stinchcomb, trustee, in favor of them for 1½ acres of this land be canceled and set aside.

This case was tried to the court without a jury, being a cause of equitable cognizance case. Pursuant to the request of the parties the court made written findings of fact and conclusions of law, finding, among other things, that defendant Lee Stinchcomb entered into an oral contract with plaintiffs' mother, Eunice A. Stinchcomb, to convey the said ten acres of land to the plaintiffs, Glen Lee Stinchcomb and Eleanor Sue Stinchcomb, who were the children of Eunice A. Stinchcomb and grandchildren of Lee Stinchcomb.

The court further found that said oral contract was entered into and that it was supported by certain considerations; that the said Lee Stinchcomb, who was the grandfather, was interested in preventing any scandal in connection with the divorce case between Eunice Stinchcomb and his son, Glen Stinchcomb, who was the father of these grandchildren; that after agreeing with Eunice Stinchcomb that defendant would deed or "fix" the ten acres for the children, she agreed to get a divorce quietly and give up certain interests in farm machinery and a 40-acre tract of land claimed by her husband, and that pursuant to this agreement Lee Stinchcomb directed that she go to one of his other sons, who was an attorney and trustee defendant in this cause, for the purpose of putting the divorce matter through and taking care of all the details.

The court then concluded as a matter of law that the evidence supporting the above findings was clear, cogent and convincing; that the statute of frauds did not apply because of a part performance and other considerations, and to which findings of fact and conclusion of law defendants took their exceptions, filed their motion for new trial and duly appealed to this court.

It is the contention of defendants that the proof was insufficient to establish a contract between Lee Stinchcomb and Eunice Stinchcomb for the benefit of the plaintiff minors. Defendant cites a number of cases in support of his contention. The law seems to be well settled that there must be a contract that is fairly definite and certain in order that it can be enforced. The cases cited by defendant Lee Stinchcomb hold this to be the rule and undoubtedly it has always been the rule of this court. This being a case for specific performance of an oral contract to convey real estate, the findings of the trial court will be weighed by this court so as to determine whether or not the judgment of said court is clearly against the weight of the evidence. Both sides agree that this is an action of equitable cognizance and that this rule applies.

A review of the testimony in this cause is necessary before one can determine whether the findings of the trial court on the issue as to whether there was a contract is clearly against the weight of the evidence. Defendants, and each of them, in their briefs made the statement that the only evidence to support the finding of the trial court in this respect was the un-

corroborated testimony of Eunice Stinchcomb, which they say was not clear and certain.

An examination of Eunice Stinchcomb's testimony shows that she first talked to Lee Stinchcomb in June, 1943. It is undisputed that Eunice Stinchcomb and Glen Stinchcomb, son of Lee Stinchcomb, have been married since 1933 and had lived on this ten acres of property for quite a while. The separation of these two people first occurred in 1942 or 1943, at which time the father, defendant Lee Stinchcomb, discussed the matter with his daughter-in-law, Eunice Stinchcomb. It seems that he tried to effect a reconciliation between his son and daughter-in-law and showed concern for the welfare of his grandchildren at all times. Lee Stinchcomb, at different times, according to her testimony, stated that he would "fix" the place for the grandchildren so that they would always have a home, referring to the ten acres. The following excerpt (C.M. 73) is indicative of her testimony:

"Q. All right, what else did they tell you? A. And at that time Mr. Stinchcomb agreed to fix this place for those children if I would relinquish all claim in the 40 acres and give Glen the car and farm machinery and other articles."

Also (C.M.74):

"Q. Did you agree not to ask for any alimony and did you agree to relinquish all your right in that 40 acres if he would deed this ten acres to you? A. That's right."

A great deal has been said by defendants concerning the language used by Lee Stinchcomb in stating he would fix it for the grandchildren. This we believe is explained, as in some places he stated he would deed it; certainly the whole of his various conversations make it pretty certain that when he used the word "fix" that he meant deed it outright to the grandchildren.

Eunice Stinchcomb testified that she relied upon the agreement to deed the ten acres to her children. She did not ask for any alimony, but went on and got a quiet divorce without bringing any scandal upon the Stinchcomb name and generally followed the suggestions and agreements she had entered into with Lee Stinchcomb. Also, she testified that Lee Stinchcomb was to make these deeds out a little bit each year in order to save himself taxes, which has been described as inheritance tax, but we feel sure they meant gift tax, and it is significant that in deeding his property to his other children that he used this method, which is undisputed in this cause.

According to her testimony the contract and agreement was certain. Lee Stinchcomb and V. E. Stinchcomb both deny the matters testified by her in general. They deny the existence of a contract; however, they do admit that about two years after the divorce that he made a deed to these grandchildren for an acre and one-half of the ten acres involved in this case. They further agreed that certain improvements were made on the ten acres of property and she was in possession without paying anybody rent, and that also Lee Stinchcomb paid for these improvements, agreeing to donate this amount to Eunice Stinchcomb in order that she would forego increasing the child support against his son.

The most that could be said in this case is that the evidence might have been evenly balanced. Certainly the findings of the trial court on the establishment of the oral contract was not clearly against the weight of the evidence. As a matter of fact, the acts and conduct of the defendants would corroborate the plaintiff's testimony even though they denied the contract.

We think that the finding of the trial court that there was an oral contract between Lee Stinchcomb and Eunice Stinchcomb on behalf of the plaintiffs is not against the clear weight of the evidence, and defendants' contention is not well taken.

Under the second proposition, or contention of defendants, they argue that the contract, being oral and pertaining to real estate, was void under the statute of frauds and unenforceable in equity by reason of its indefiniteness and uncertainty, and that Lee Stinchcomb was not estopped from availing himself of the statute of frauds. A great number of cases are cited in support of the rule to the effect that an oral contract for the conveyance of real estate is void under the statute of frauds and would be unenforceable in equity if it was indefinite and uncertain. It is undisputed in this case that the contract was oral. Also, there is no dispute that oral contracts for the conveyance of real estate under the statute of frauds are void unless there has been a part performance, or circumstances which would prevent the enforcement of the statute of frauds. See Harris v. Arthur, 36 Okla. 33, 127 P. 695, wherein the fourth paragraph of the syllabus is as follows:

"Acts done under a parol contract for the sale of an interest in land most frequently held as such part performance as to take the same out of the statute of frauds, are: (a) The delivery of possession to, or the assumption of exclusive and notorious possession by, the vendee under the verbal contract of sale, and with the knowledge of the vendor, accompanied by part payment of the consideration; (b) or the expenditure of money by the vendee in making improvements, permanently beneficial to the estate, with the knowledge of the vendor, and in pursuance of such parol agreement of sale; (c) or where the parties have so acted under the parol agreement as to alter their position so that a restoration to the former position is impractical or impossible; (d) or where the parties have so acted under the agreement that to allow the defendant to take shelter under the statute, would be to inflict an unjust and unconscientious injury or loss upon the other party."

The above rule seems to have been the rule of this court down through the years and the cases cited by defendant are not in conflict with this general rule. The only question, as it appears, is whether there has been such partial performance of this oral contract, or whether the circumstances are such that it would be now unequitable and unjust to permit the defendants to apply the statute of frauds against the claim of the plaintiffs.

The evidence in the cause shows that there were certain improvements by Eunice Stinchcomb amounting to about $200, paid by her, and $800 given to her by defendants. These were undoubtedly valuable improvements and of a permanent character; however, the testimony surrounding these improvements would not, in our opinion, be sufficient standing alone to bar or make this an exception to the statute of frauds; however, on the other hand, it seems that following the conversations would constitute the agreement between Lee Stinchcomb and Eunice Stinchcomb, that she fully performed all of her part of the contract; that she did not claim any interest in Glen Stinchcomb's farm machinery, did not raise any question to secure alimony, which undoubtedly she would have been entitled to if the circumstances she related were true, and that she submitted to the wishes of the grandfather in dealing with her husband, who was his son. The divorce action under which she could have made her claim for alimony and for probably a better property settlement and other matters, has now become final and she cannot be restored to her former position. It is significant in this case that defendants have never tried to collect any rent from the plaintiffs; that the possession of the house and ten acres was given to the mother of the plaintiffs in the divorce action and it is beyond any doubt that the parties have now acted under the oral agreement found to have existed by the trial court; that their positions have all been altered and to allow the defendants now to revoke that agreement, and after the plaintiffs' mother has

given up her rights and position, would certainly be unjust and unequitable.

It is the purpose of the statute of frauds to prevent frauds and not to help perpetrate it, and that is the reason this court has followed the rule down through the years that wherever the facts and circumstances are such that it would be unequitable to apply the statute of frauds, that the powers of equitable estoppel would be applied to the circumstances so as to promote right and justice.

We believe the evidence in this cause was definite and certain enough as to the contract; that Eunice Stinchcomb had performed all of her part of the contract and that Lee Stinchcomb, having reaped benefits for his family and his son, and by his actions causing the plaintiffs' mother to lose her rights, is certainly now estopped to take shelter under the statutes.

It is our opinion that the second contention of the defendant is not well-taken and by reason of the existence of the oral contract and plaintiff's mother's possession which was notice to the world, that the trust deed to V. E. Stinchcomb, under all the attending circumstances, should have been canceled and set aside and that the trial court's findings in this respect should be in all things affirmed.

Having reviewed all the evidence and weighed the evidence in this cause, it is the judgment of this court that the judgment, findings of fact and conclusions of law are not against the clear weight of the evidence, and are in accordance with the decisions of this court and should be in all things affirmed.

This court acknowledges the services of Attorneys Hugh M. Sandlin, F. L. Warren, and C. H. Baskin, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by this Court.

WELCH, GIBSON, DAVISON, JOHNSON, and O'NEAL, JJ., concur. HALLEY, V. C. J., and BINGAMAN, J., dissent.

HALLEY, V.C.J. (dissenting). I regret having to dissent in this case, but I think the majority opinion wholly disregards the statute of frauds of this state in that it makes title to real estate rest on oral testimony alone, where the facts do not justify it.

Our statute of frauds was first shown in the statutes of Oklahoma Territory in 1890, and was adopted from the Laws of Dakota Territory of 1887, which was undoubtedly taken from Lord Tenterden's Act, §§6 and 7, Statute 9 George IV, c. 14. Its purpose was "to prevent fraud and perjury in the enforcement of obligations depending for their evidence on the unassisted memory of witnesses, by requiring certain enumerated contracts and transactions to be evidenced by writing signed by the party to be charged." 37 C.J.S., Frauds, Statute of, §1.

The counsel for the minors in this case asked their mother, when she was on the stand as the only witness for the plaintiffs, a leading question to this effect:

"Q. Did you agree not to ask for any alimony and did you agree to relinquish all your right in that forty acres if he would deed this ten acres to you? A. That's right."

The court held that this question was leading. Counsel then asked her to state what her father-in-law had said to her in regard to the property settlement and divorce, and what she actually agreed with him, and she gave this answer:

"A. I was to have most of the household articles, the furniture and other things, and this ten acres for the children if I would let Glen have all the farming machinery and the car and the equity in this forty acres."

But on cross-examination, when she was pinned down as to this particular conversation, she testified as follows:

"Q. What did he say? How did he say it? A. He said, 'I will fix this place for the children because you will probably remarry some day', and at that time was when he said he didn't care to furnish another man a home.

"Q. Was there anything else said? A. He said we could work out the property settlement between Glen and I as to the other things.

"Q. He said you and Glen could work out the property settlement? A. That's right.

"Q. Well, was there any condition put on your working out a property settlement with Glen? A. No."

The evidence here at no place shows a clear-cut agreement on the part of Lee Stinchcomb, the grandfather of the minors, that he would convey a particular ten acres at a particular time to the children. In my opinion, the best that can be said is that he agreed to "fix it" so the children would have a home, with which agreement he fully complied.

It is just such situations as this that necessitate a statute of frauds. Here was an old man who wanted to help his grandchildren. He said that even though his son did not do it, he would "fix it" so that the children should always have a home; but he did not want to give that home to his daughter-in-law, because she might marry another man. The mother of the children brought this suit on their behalf, claiming that he told her he would give them a particular ten-acre tract. The testimony on this is exceedingly weak, and is contradicted in every particular by the testimony of the defendant Lee Stinchcomb.

We have held in this state, in Webster v. Neal, 119 Okla. 93, 248 P. 596, that a decree for specific performance will not be granted unless the evidence of the making of the contract is clear and convincing, and unless it terms, the consideration on which it was founded, and the time of execution are clearly established. That case further held that where an action for specific performance of a parol contract for the sale of certain interest in land is brought, and where the existence of such contract is denied, its existence must be established by clear and convincing testimony, and a mere preponderance is not sufficient; and that specific performance of a parol contract for the sale of land upon the ground of part performance will not be decreed unless the facts alleged to be in part performance are established by clear and convincing testimony. The exception made to the provision that oral contracts for the sale of land violate the statute of frauds is chiefly concerned with contracts between vendor and vendee of land, where the vendee goes into possession of the land and constructs certain improvements, which may take the agreement from under the statute of frauds; but in this case the children and their mother were in possession of the land, and there was no change in the possession whatsoever. The mother went onto the land in 1933, when she was first married, and continued to live there. In the settlement of property rights in the divorce action, she never asked that any provision be made in regard to this land, other than the provision in the property-settlement agreement that she and the children were to occupy the house rent free, and this was called to the court's attention in her presence, and she at no time made any claim that the ownership of the entire ten acres was to vest in her minor children. She was allowed a specified sum for child support at the time of the divorce. It developed after the decree that this was not sufficient to maintain the children, but she went to her father-in-law and told him that if the house could be remodeled and modernized so that she could rent out part of it for a substantial rental, she would not need to have an additional

sum allowed for child support. She testified that she put about $200 into these improvements and the defendant, her father-in-law, about $800. He testified that he spent $950 on these improvements. She never paid one cent of this sum. These improvements were made in order to obtain a rental income from the property, and did not constitute an assertion in any way of a claim of ownership of the ten acres, or any part thereof, by her for and on behalf of her children.

In Johnston v. Baldock, 83 Okla. 285, 201 P. 654, it was held that a prior possession taken under a lease and continued, without a surrender of the premises and a re-entry under the contract to purchase, is wholly insufficient and of no avail to take the oral contract out of the statute of frauds, and that the possession necessary to take an oral contract for the sale of real estate out of the statute of frauds must be clearly shown by the evidence to refer to and result from, and to have been taken and entered into by virtue of, the contract. The possession that the plaintiff had here for her children was the same possession that she had before the alleged contract was made, and certainly this possession was not sufficient to take the alleged oral contract out of the statute of frauds. This case was followed in Cannon v. Unruh, 84 Okla. 36, 202 P. 182.

I cannot see that the expenditure of the money by the mother of the children could by any stretch of the imagination be asserting any claim for the children, other than what the grandfather had indicated he would do for them. The simple fact that she improved the house does not indicate that she was to get the ten acres. The grandfather had said he would "fix it" so the children would have a home. He did not say he would "fix it" so they would have a rental income in addition to a home. This was a thing that the mother worked out with the grandfather after the divorce decree. There is nothing in that transaction to indicate that this improvement was made in pursuance of the alleged oral agreement to convey the land to the children. The alleged agreement was between the mother and the father-in-law for the benefit of the children, but she has done nothing to so alter her position that a restoration to her former position is impracticable or impossible. She should have been just as much interested in keeping down any scandal, for the protection of her children, as was their grandfather, and if any action was taken by her in the divorce on the strength of statements by her father-in-law, it would be upon the statement that the children would have a home—which they have.

I submit that the conduct of the grandfather in this case in claiming his rights under the statute of frauds would not inflict an unjust and unconscientious injury or loss upon his two grandchildren. This land was his, and he had a right to dispose of it as he saw fit. He has claimed at all times that he never did make any promises to the mother of the children that he would give the children ten acres. I submit that the evidence in this case shows that Harris A. Arthur, 36 Okla. 33, 127 P. 695, does not sustain the position of the plaintiff, as she has not brought herself under any of the requirements of that case. This is simply a case where the statute of frauds applies, and I can see nothing that would justify the trial court in ignoring this wholesome legislation.

I dissent.